## UNITED STATES DISTRICT COURT

District of New Jersey

| | |
|---|---|
| Chambers of<br>**William H. Walls**<br>District Judge<br>_____<br><br>(973) 645-2564<br>(973) 645-3436 Fax | Martin Luther King Jr.<br>Federal Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102 |

<u>NOT FOR PUBLICATION</u>

<u>LETTER ORDER</u>

<u>ORIGINAL ON FILE WITH CLERK OF COURT</u>

July 18, 2006

**Appearances:**

Samuel J. Halpern, Esq.
Samuel J. Halpern, Attorney at Law
443 Northfield Ave.
West Orange, NJ 07052
  Attorney for Plaintiff Chander Kant

Antonia Kousoulas, Esq.
Kousoulas & Associates P.C.
41 Madison Ave., 40th Fl.
New York, NY 10010
  Former Attorneys for Plaintiff Chander Kant

Howard Mankoff, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
425 Eagle Rock Ave., Suite 302
Roseland, NJ 07068
  Attorneys for Defendant Seton Hall

Re: <u>Kant v. Seton Hall</u>, 00-cv-5204 (WHW)
   Motion to Intervene by Kousoulas & Associates and Plaintiff's Motion for Attorney Fees

Dear Litigants:

  Pursuant to Fed.R.Civ.P. 24(a), plaintiff's former attorney Kousoulas & Associates has

moved to intervene in order to protect its interest in attorney fees and for attorney fees pursuant

to 42 U.S.C. § 2000e-5(k). The Court heard oral argument on these motions on July 10, 2006 and now denies the motion for intervention and grants the motion for attorney fees with the amount requested reduced.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff originally brought this complaint, *pro se*, pursuant to Title VII of the Civil Rights Act of 1964, alleging that he was not promoted to a full professor on three separate occasions based on his national origin (Indian) and because he had complained of discriminatory conduct. After filing the complaint, plaintiff retained the services of Ms. Kousoulas.[1] In January of 2003, this Court granted summary judgment to defendant on plaintiff's first three discrimination claims as time-barred and dismissed plaintiff's claims of discrimination related to his fourth promotion application because plaintiff failed to provide sufficient evidence to support a determination that Seton Hall's proffered reason for denying plaintiff a promotion was a pretext for discrimination. However, the Court denied summary judgment on plaintiff's claim of retaliation by Dr. John Dall, head of the Economics Department and Delores Martin, Dean of the Business School. Plaintiff claimed that these individuals retaliated against him and voted to deny him a promotion based on his previous complaints of discrimination. The case was heard by a jury, which reached verdicts on April 11, 2006: The jury determined that (1) Dr. Dall, but not Ms. Martin, had retaliated against plaintiff, (2) his discriminatory retaliation had infected the promotion process and (3) the retaliation damaged plaintiff in the amount of $80,000. Following the entry of the jury verdict, plaintiff's counsel made a timely motion for attorney fees and pre-

---

[1] Ms. Kousoulas is a partner in the firm Kousoulas & Associates P.C. Plaintiff was also represented at trial by Ms. Bonnie Moussman, of counsel to Kousoulas & Associates.

judgment interest. Shortly after filing that motion, plaintiff dismissed his counsel and filed his own motion, *pro se*, to amend the judgment to include punitive damages. A few days following this strange turn of events, Seton Hall filed a motion for post rial relief in the nature of judgment notwithstanding the verdict pursuant to Fed.R.Civ.P. 50 or alternatively a new trial pursuant to Fed.R.Civ.P. 59.

Immediately following the filing of these several motions, the Court conducted a status conference with the parties. At that conference, the Court acknowledged Dr. Kant's dismissal of his attorney and adjourned the return date for the motion for attorney fees until June 26, 2006 and warned counsel that its reading of the Title VII attorneys' fee statute provided for attorney fees to be awarded to the prevailing plaintiff only and that the statute provided no right in counsel to pursue fees. Several weeks after the conference, plaintiff's former counsel filed a motion to intervene in order to protect their perceived interest in attorney fees, primarily by asserting a statutory lien over potential fees awarded pursuant to Title VII. Plaintiff's former counsel's motion to intervene and the motion for statutory attorney fees are presently before this Court.

## DISCUSSION

**I.    Motion to Intervene**

The Federal Rules provide "anyone" with a right to intervene:

> Upon timely application . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). In addressing the specific contours of Rule 24(a), the Third Circuit has required that a party seeking intervention as a matter of right must establish:

>  1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005), citing Kleissler v. United States Forest Service, 157 F.3d 964, 969 (3d Cir.1998).  Further, the party seeking to intervene must meet "[e]ach of these requirements . . . to intervene as of right." Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir. 1995) (citation omitted).

Plaintiff's former counsel's motion for intervention can be dealt with quite simply with reference to the Court's previous warning to counsel that any award of attorney fees is made to the party, not to a party's counsel.  Specifically, Title VII of the Civil Rights Act of 1964 provides that "the court, in its discretion, may allow the *prevailing party* . . . a reasonable attorney's fee (including expert fees) as part of the costs, . . . ." 42 U.S.C. § 2000e-5(k) (emphasis added); see also Evans v. Jeff D., 475 U.S. 717, 730 n.19 (1986) (construing § 1988 as limiting attorney fees to the plaintiff and not his attorney); Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983) (noting that "[t]he legislative history of § 1988 indicates that Congress intended that 'the standards for awarding fees be generally the same as under the fee provisions of [Title VII].'" (citations omitted)); Soliman v. Ebasco Servs., Inc., 822 F.2d 320, 322-23 (2d Cir. 1987) ("independent of his client, an attorney has no personal right to an award of statutory attorney's fees under 42 U.S.C. § 2000e-5(k)"); Moore v. National Ass'n of Secs. Dealers, Inc., 762 F.2d 1093, 1099 n.10 (D.C. Cir.1985) ("The goal of the [Title VII provision for attorney's fees] is to

encourage plaintiffs to bring meritorious suits by providing *them* a source of funds for retaining competent counsel.") (emphasis in original).

In short, an attorney lacks greater interest in the award of attorney fees pursuant to Title VII to justify the intervention sought here. Alternatively, plaintiff's former counsel argues that their interest in the underlying litigation is supported by their statutory lien on attorney fees pursuant to New Jersey law. However, the New Jersey law protects fees presently available, and there is no indication that the lien asserted by plaintiff's former counsel is applicable to potential future fees subject to the discretion of the court in applying a federal statute's fee provision.

A determination that counsel has no interest in the statutory fee, divests counsel, as distasteful and unfair as it may appear, of any sufficient interest in the underlying litigation. Given the unique circumstances surrounding this case, the Court notes the relative paucity of case law to provide guidance. However, in an unreported decision from the Northern District of New York, one court concluded under very similar circumstances that plaintiff's former counsel lacked a sufficient interest in pursuing statutory fees under Title VII. Burrell v. City of Binghampton, 1989 WL 29878 (N.D.N.Y. Mar. 24, 1989). In Burrell, plaintiff was successful in a bench trial in which she had alleged violations of Title VII. Following the bench trial, the court awarded plaintiff damages (totaling nearly $37,000) for back pay, prejudgment interest, costs and attorney fees (the attorney fees totaled $26,000). The attorney fees amounted to a significant portion of the award, and "plaintiff, without the aid or consent of counsel, approached the [defendant] for personal reasons with the intention of ending the litigation without the necessity of further judicial proceedings and of getting some of the money that was due her." Id. at *1.

Plaintiff, apart from her counsel, then agreed to settle the case with defendant for $9,000 in addition to $3,500 for attorney fees. Following plaintiff's actions, plaintiff's counsel requested a conference with the court and objected to the manner in which the case was being settled, "clearly concerned with the possibility of not receiving the amount of money awarded on the attorney's fees application . . . ." Id. On the same day of the conference, plaintiff noticed her attorney that she no longer wanted to retain their services, and plaintiff executed the settlement with defendant and without assistance from her former attorney. Part of the settlement was tendered to plaintiff's former counsel as attorney fees for the work previously performed on plaintiff's behalf, but those fees were rejected by the law firm who then sought to claim a right in the statutory fees already awarded by seeking intervention under Rule 24(a)(2) and a determination by the court that the firm was entitled to the fees pursuant to an attorney's charging lien under New York law. In essence, the firm's argument, as described by the court, was:

> that the charging lien provided by New York law creates an entitlement in them to the attorneys' fees awarded to its (former) client who was the prevailing party in the Title VII action; that is, the law firm claims that the New York charging lien gives them an independent right to the Title VII fee award which survives the satisfaction of judgment effected by plaintiff.

Id. at *2.

The Burrell court addressed plaintiff's former counsel's argument regarding their interest in securing their attorney fees by citing the purpose of the Title VII fee statute and several Supreme Court decisions and concluded that attorney fees under the statute become property of the plaintiff, not his attorney. The court held that plaintiff's former counsel had a limited right to these funds only "pursuant to whatever private contractual arrangement was entered into between the client and the attorney." Id. at *3. Moreover, while the court recognized the "deleterious

effect" such an outcome might have in future civil rights litigation, it found no right under the federal law to allow the intervention sought by plaintiff's former attorney.

In addition, the Burrell court rejected the law firm's argument that a state statute providing for an attorney charging lien created the necessary interest to allow for intervention.[2] Id. at *2 ("In short, a charging lien under New York law cannot be construed, consistent with the Supremacy Clause, to create, in favor of counsel, an entitlement or an independent right to the attorneys' fee awarded to the prevailing party under one of the civil rights laws.").

While noting the importance of the statute in protecting attorneys from the "knavery of his client," the Burrell court found that it did not "create an entitlement, not recognized under

---

[2] The New York statute providing for an attorney charging lien that was discussed in Burrell is almost identical the New Jersey's attorney charging lien statute. Specifically, Section 475 of New York's Judiciary Law provides that:

> From the commencement of an action . . . in any court . . ., the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict . . . decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.

N.Y. Judiciary Law § 475 (McKinney 1988). In comparison, New Jersey's charging lien provides that:

> After the filing of a complaint . . . the attorney or counsellor [sic] at law, who shall appear in the cause for the party instituting the action . . ., shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record.

N.J. Stat. Ann. § 2A:13-5 (West 2000).

federal law, to attorney's fees awarded by virtue of a statutory fee provision." Id. at *4.  In essence, the court reasoned that the statute was limited to attachment to affirmative recovery, or actual damages awarded, under the act.  However, the court felt that the Supremacy Clause limited it from recognizing the application of the lien against fees that federal legal precedent had already deemed as not available to the attorney.  In conclusion, the court held that the:

> [Firm's] charging lien, if any, would attach to the proceeds of the Title VII discrimination cause of action-i.e., the back pay and prejudgment interest award; they do not, however, seek such a lien. Rather, they seek to have a lien imposed on an award of money-i.e., the attorneys' fee award-that is separate and distinct from the back pay recovery which the court deemed plaintiff entitled to for the discrimination cause of action she alleged in her complaint. In the court's view, section 475 of the Judiciary Law does not authorize such a lien; moreover, construing that section to authorize such a lien would, in effect, result in creating a personal right in the attorney to the fee award which would impermissibly conflict with contrary, and supreme, federal law. Lastly, it may very well be that § 475 simply has no application to lawsuits founded on federal causes of action where attorney's fees are governed by operation of a federal statute which creates the fund from which attorneys are ordinarily to be paid, thus standing in contradistinction to lawsuits in which the fund for attorney's fees derives from the affirmative recovery on the client's cause of action.

Id.  Applied here, the Burrell court's reasoning mirrors the circumstances of this case, and this Court is persuaded that the Burrell court's conclusion regarding a former attorney's interest in statutory attorney fees made available pursuant to Title VII, is appropriate here.  As unfortunate as this outcome may be, Title VII does not permit plaintiff's counsel to claim a personal interest in attorney fees.  In addition, the New Jersey statutory protections allowing an attorney charging lien does nothing to alter this outcome.  As such, this Court finds that plaintiff's former counsel Kousoulas & Associates have no interest sufficient to justify intervention in this matter.  The Court notes that plaintiff's former attorneys may have a separate claim pursuant to the retainer agreement entered into with plaintiff for their fees.

**II.     Motion for Attorney Fees**

Notwithstanding plaintiff's former counsel's lack of interest in attorney fees justifying dismissal of its motion for intervention, the motion for attorney fees remains.  Plaintiff indicated at oral argument that he was not abandoning the motion for fees although he has dismissed his counsel who originally filed the motion.  Thus, this Court will proceed to determine whether the award of attorney fees is appropriate and determine an adequate award.

The parties do not dispute that plaintiff is a prevailing party under the statute.  Plaintiff contends he is entitled to $140,052.75 in attorney's fees, the "lodestar" amount, and $2,595.41 in expenses. The "lodestar" amount is the amount determined by multiplying the number of hours reasonably expended by counsel by the amount of a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).   In general, the reasonable hourly rate should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation."  Blum v. Stenson, 465 U.S. 886, 896 (1984).  Plaintiff maintains that $325 an hour is an appropriate hourly rate for both Ms. Kousoulas and Ms. Moussman. Plaintiff supports its application with (1) the affidavits of Ms. Kousoulas and Ms. Moussman stating that $325 an hour is comparable to their normal billing rates, and (2) supporting affidavits from local counsel claiming that the usual rate for lawyers practicing employment law in New Jersey with the level of experience similar to plaintiff's counsel is between $300 and $400 an hour.  Defendant does not contest the "lodestar" rate.  The Court accepts $325 as an appropriate lodestar rate.

In challenging plaintiff's request for attorney fees, defendant contends that the amount of fees should be reduced because plaintiff was only partially successful in the lawsuit.  It is clear

that the Court has the discretion to make certain adjustments to the "lodestar" amount.  See Hensley, 461 U.S. at 435-37.  The Supreme Court in Hensley stated that to determine the appropriate adjustments, district courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435; see also Blakey v. Continental Airlines, Inc., 2 F. Supp. 2d 598, 605 (D.N.J. 1998).  The reduction of the "lodestar" is justified "[i]f . . . a plaintiff has achieved only partial or limited success" and "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate" is an "excessive amount."  Hensley, 461 U.S. at 435.

In assessing whether the "lodestar" amount should be reduced for limited success, courts have focused on the interrelationship between the winning and losing claims asserted by the plaintiff.  See Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031 (3d Cir. 1996).  In Washington, as here, plaintiff had asserted both discrimination and retaliation claims under Title VII.  Plaintiff Washington was unsuccessful on his discrimination claims but prevailed on his retaliation claims. The district court reduced the award by fifty percent and the Court of Appeals affirmed noting "the alleged relatedness between the two general claims is too tenuous to support a finding of error" and the district "court was well within its broad discretion when it discounted the fees . . . for partial success." Id. at 1044.

However, the Washington court, which recognized only that the district court's finding that the claims of discrimination and retaliation were tenuous, did not affirmatively determine that plaintiff's failure on his discrimination claims is *always* sufficiently tenuous from a claim of retaliation to support a reduction in requested attorney fees in every similar case.  As the Hensley court recognized, "there is no certain method of determining when claims are 'related' or

-10-

'unrelated.'" Hensley, 461 U.S. at 437 n.12. Turning to this case, the Court cannot conclude that plaintiff's discrimination claims were sufficiently distinct from or unrelated to the retaliation claims. In fact, plaintiff specifically claimed racial discrimination by defendant (claims that this Court ultimately dismissed) and later retaliation by defendant based on the very same complaints of alleged discrimination. See generally McCloud v. City of Sunbury, 2006 WL 449198 (M.D. Pa. Feb. 23, 2006) (granting motion for attorney fees for all time spent in securing a jury verdict in favor of plaintiff on retaliation claim despite fact that discrimination claims were dismissed).

However, while it appears that plaintiff's success on his retaliation claim is sufficiently related to the overall work done, the Court notes that plaintiff's potential claim could have been much greater had the Court not dismissed the discrimination claims. While the Third Circuit has expressly rejected a proportionality test between the jury award and the fees sought, this Court may properly consider the "degree of success obtained" in order to determine appropriate attorney fees. Hensley, 461 U.S. at 436. Because plaintiff was not successful on its claims for discrimination, the Court will consider this failure when determining counsel fees. While the Court will not reduce plaintiff's attorney fees on a proportional basis based on the claims dismissed, because as discussed, the successful retaliation claim was related to the discrimination claims, the Court will reduce the total award of plaintiff's attorney fees sought based on the limited overall degree of success. See id. at 435 n.11 ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.' Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested.").

In assessing a proper reduction of fees, the Court finds that a thirty percent reduction is appropriate under the circumstances.  Given that plaintiff's discrimination and retaliation claims were related, a proportional reduction of seventy-five percent as suggested by defendant would not be appropriate.  Moreover, the nature of the work done by plaintiff's attorney as reflected by the time sheets submitted cannot be parsed, nor does defendant claim that it can, to separate work related specifically to the retaliation claim versus work done on the discrimination claim.  The Court notes that an example of this category of interrelated work performed by plaintiff's former counsel includes the time spent by counsel in deposing witnesses, such as Dr. Dall, who were crucial to all of plaintiff's claims.

In setting thirty percent as an appropriate reduction, the Court is guided by the Supreme Court's statement in Hensley that,

> In [many] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
> . . . .
> There is no precise rule or formula for making these determinations [regarding the reasonableness of attorney's overall time]. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

Id. at 436-37.

With this guidance, the Court finds a thirty percent reduction reflects the competing interests at play, namely that plaintiff's retaliation claim was related to discrimination claims, but that those discrimination claims were ultimately dismissed.  However, the thirty percent

reduction will apply only to the time billed by plaintiff before the Court's January 3, 2003 summary judgment opinion which dismissed plaintiff's discrimination claims. After that date, all work done by plaintiff's attorney related to the sole remaining retaliation claim which plaintiff successfully prosecuted. As such, plaintiff is entitled to a full compensation for attorney fees related to this time. As for the time before the issuance of the summary judgment opinion, the court will reduce the lodestar by thirty percent to reflect the fact that plaintiff was only partially successful.

The following figures, represented by counsel for plaintiff without opposition from defendant, comprise the total time for which the Court considers its award of fees. Plaintiff's former counsel expended 155.68 hours of time before the Court's January 3, 2003 opinion which dismissed plaintiff's discrimination claims reducing the number of claims available to plaintiff. Applying the lodestar rate of $325 to these hours, the fee requested amounts to $50,596. Reducing that amount by thirty percent to reflect the success on a portion of its original claims, results in an award of $35,417.20 for time spent before the issuance of the summary judgment opinion. Following that opinion, Ms. Kousoulas expended 197.55 hours, including trial time, and reducing by half all travel time to the court during trial, and including the time spent in preparing this motion for fees. Again, using $325 and applying it to these hours, Ms. Kousoulas is entitled to $64,203.75 for her work after the issuance of the summary judgment opinion. Ms. Mussman, who joined Ms. Kousoulas after the summary judgment opinion was issued and therefore exerted all her time only on the retaliation claim, seeks to recover $25,214 for her time. The Court finds that these totals are appropriate and given the reduction based on the litigation of unsuccessful claims; the Court awards plaintiff $124,834.95 in attorney fees.

In addition, the Court notes that defendant has not objected to any of plaintiff's claims for hours that appear to be "excessive, redundant, or otherwise unnecessary." Id. at 434. Defendant seems to limit its objections to the fee requested based on the partial success of plaintiff. As such, and after an independent review of the billing sheet provided by plaintiff's counsel, the Court is satisfied that the number of hours presented by plaintiff's counsel is satisfactory. Defendant has challenged plaintiff's request for costs in the amount of $2,595.41, essentially arguing that the partial success of plaintiff should result in a reduction of these costs as well. The Court disagrees and finds that no reduction is necessary and that plaintiff's request for costs is reasonable and grants the request in full. This is especially so given that the costs, many of which were incurred after the summary judgment, were at the very least related to plaintiff's claims for retaliation.

The total award, including attorneys fees and costs, to be awarded to plaintiff is $127,430.36.

**CONCLUSION**

It is on this 18th day of July, 2006,

ORDERED that plaintiff's former counsel's motion for intervention is DENIED and plaintiff's motion for attorney fees and costs is GRANTED and it is FURTHER ORDERED that plaintiff is awarded $127,430.36 to be paid by Defendant within thirty (30) days of the resolution of all pending motions.

                                                   s/ William H. Walls
                                             **William H. Walls, U.S.D.J.**